Filed 1/25/23  P. v. Lopez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. GUALBERTO LOPEZ, Defendant and Appellant. | B314651 (Los Angeles County Super. Ct. No. VA065899) |

APPEAL from an order of the Superior Court of Los Angeles County, Laronda McCoy, Judge.  Remanded.

Robert D. Bacon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Gualberto Lopez of first degree murder with true findings on the special circumstance allegations that the murders were committed in the course of a burglary, robbery, and kidnapping.  Years after he was convicted, Lopez petitioned the trial court for vacation of his conviction and for resentencing under then recently-enacted Penal Code[1] section 1172.6.[2]  The trial court summarily denied relief without appointing counsel for Lopez.  We conclude that the trial court erred and therefore remand.

## BACKGROUND[3]

I.  The murder of Ernesto Campos

In 2002, Lopez and David Flores were jointly tried for the murder of Ernesto Campos.  At trial, their accomplice Roman Valdez testified that Roberto Campos[4] was the victim of a home invasion robbery in 2001.  Believing that Ernesto knew who committed the home invasion robbery, Roberto offered to pay Valdez to kidnap Ernesto so that Roberto could interrogate him.

---

[1]  All further undesignated statutory references are to the Penal Code.

[2]  Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)

[3]  The background is derived from the opinion affirming Lopez's and codefendant David Flores's judgments of conviction on direct appeal.  (*People v. Flores* (June 17, 2004, B164512 [nonpub. opn.].)  We take judicial notice of that opinion.  (Evid. Code, § 452, subd. (a).)  Also, at the People's request, we take judicial notice of the file in *In re Lopez,* B304421.  (Evid. Code, § 452, subd. (d).)

[4]  Because parties share surnames, we refer to them by first names, intending no disrespect.

Valdez agreed and enlisted Lopez and Flores to help him. Valdez's relative rented a Chevy Suburban to use in the kidnapping. Valdez, Flores, and Lopez drove past Ernesto's home in the hope of learning when Ernesto left for work.

On the morning of April 25, 2001, Valdez, Lopez, and Flores drove to Ernesto's home. Valdez had a handgun Roberto had given him, and Valdez gave Lopez and Flores guns he had purchased on the street. The men entered the home, and Valdez moved Ernesto and Ernesto's wife, Gloria Meza, to the kitchen. They searched for drugs and demanded money.

After Valdez telephoned Roberto, Valdez told Flores and Lopez to take Ernesto to the Suburban. Valdez then heard numerous shots and saw Lopez running after Ernesto, shooting. Valdez ran to the Suburban. Lopez and Flores entered the Suburban, and Valdez drove away. Flores was bleeding, so Valdez took Flores to the hospital, and then Valdez and Lopez cleaned the Suburban. Lopez told Valdez that when Ernesto tried to escape, Flores grabbed Ernesto and Lopez accidentally shot Flores in the arm.

Meza testified that when the men entered her home, Valdez appeared to be in charge. Flores "look [ed] all over," while Lopez held Ernesto at gunpoint. Flores and Lopez took Ernesto out of the house, while Valdez remained inside with Meza. From there, Meza saw Ernesto struggle with one of the men and heard 10 or 12 gunshots. Meza saw Lopez and Flores running with handguns. Ernesto died.

Valdez paid Lopez $2,500 and Flores $300 or $400.

Flores testified on his own behalf, saying that he initially refused to help Valdez but gave in because he thought Valdez would hurt him if he didn't go. According to Flores, Lopez was a

3

willing participant who told the people in the residence not to move, pointed his gun at them, searched the house, and took Ernesto out of the house. When Ernesto ran, Lopez chased Ernesto and shot at him.

II.     Jury instructions, verdict, and sentence

Lopez and Flores's jury was instructed on felony murder occurring during the commission of a residential burglary, robbery, or kidnapping. The jury was further instructed, per CALJIC No. 8.80.1, that if it found a defendant was not the actual killer, or the jury was unable to decide the defendant was the actual killer or an aider and abettor or co-conspirator, it could not find the special circumstance true as to that defendant unless it found beyond a reasonable doubt that the defendant, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the first degree murder, or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested or assisted in committing the crime of residential burglary, robbery, or kidnapping which resulted in Ernesto's death. The instruction further said, "A defendant acts with reckless indifference to human life when that defendant knows or is aware that his acts involve a grave risk of death to an innocent human being."[5]

---

[5]     The jury was also instructed on aiding and abetting with CALJIC Nos. 3.00 [principals], 3.01 [aiding and abetting defined], 3.02 [principals-liability for natural and probable consequences], and 8.27 [first degree felony murder-aider and abettor]. However, an aider and abettor may not be convicted of murder under the natural and probable consequences doctrine. (*People v. Chiu* (2014) 59 Cal.4th 155; Senate Bill No. 1437.) The jury was

4

The jury found Lopez and Flores guilty of first degree murder (§ 187, subd. (a); count 1) with true findings on the special circumstance allegations that the murder was committed during commission of residential burglary, residential robbery, and kidnapping (§ 190.2, subd. (a)(17)); kidnapping (§ 207, subd. (a); count 2); first degree residential robbery (§ 211; count 3); and first degree residential burglary (§ 459; count 4). As to all counts, the jury found that Lopez and Flores personally used a firearm (§ 12022.5, subd. (a)(1)).

On December 23, 2002, the trial court sentenced Lopez, as relevant here, to life without the possibility of parole for the murder plus four years for the gun allegation. We affirmed the judgment of conviction. (*People v. Flores*, *supra*, B164512.)

III. Lopez's petitions for resentencing

After passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Lopez filed multiple petitions for resentencing under the new law, including the one at issue. His first petition was filed in February 2019, and the trial court summarily denied it in March 2019, finding that all individuals involved in the murder were major participants, and their conduct showed a reckless indifference to human life.[6]

---

also instructed on conspiracy with CALJIC No. 6.11, which stated that a conspirator is guilty of the crime the conspirator agreed to commit "but is also liable for the natural and probable consequences of any crime of a co-conspirator" to further the conspiracy's object, even if the nontarget crime was not part of the agreed upon objective.

[6] The court's order stated that four men entered Ernesto's home. While there was evidence that a fourth man was an

5

In February 2020, Lopez filed another petition for resentencing. We treated it as a petition for writ of mandate and, as such, denied it.[7]

Then, in July 2021, Lopez filed the at-issue petition for resentencing under section 1172.6. On July 21, 2021, the trial court summarily denied the petition without appointing counsel for Lopez. In its order denying the petition, the trial court noted that Lopez's prior 2019 petition had been denied and quoted the order denying that prior petition.

Lopez now appeals from the 2021 order denying his petition.

## DISCUSSION

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with the person's individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) To achieve these goals, Senate Bill 1437 added section 189, subdivision (e) (limiting application of the felony-murder rule) and section 188, subdivision (a)(3) (stating that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime"). Section 189, subdivision (e), now provides that a participant in the perpetration of qualifying felonies is liable for felony murder

---

accomplice, the evidence was that only three men went to Ernesto's home that day.

[7] Our order denying the petition referred to exhibits Lopez had provided showing that the trial court had denied two prior petitions.

6

only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (*Gentile*, at p. 842.) As amended, section 188 "bars a conviction for first or second degree murder under a natural and probable consequences theory." (*Gentile*, at p. 846.)

Senate Bill 1437 also added section 1172.6, which created a procedure whereby persons convicted of murder under a now-invalid theory may petition for vacation of their convictions and resentencing. A defendant is eligible for relief under section 1172.6 if the defendant meets three conditions: the defendant (1) must have been convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on the person's participation in the crime, (2) must have been convicted of first or second degree murder, and (3) could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437. (§ 1172.6, subd. (a).) If a petitioner makes a prima facie showing of entitlement to relief, the trial court shall issue an order to show cause (§ 1172.6, subd. (c)) and hold an evidentiary hearing at which the prosecution bears the burden of proving "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under the law as amended by Senate Bill 1437 (§ 1172.6, subd. (d)(3)).

When the trial court here denied Lopez's petition, Courts of Appeal were split regarding two issues concerning section 1172.6. First, when in the petitioning process are petitioners entitled to

7

counsel?  Second, is an aider and abettor defendant whose jury was instructed *before* our California Supreme Court issued *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) eligible for section 1172.6 relief?  *Banks* and *Clark* substantially narrowed and clarified the class of aider and abettor defendants who are major participants who act with reckless indifference to human life during a felony and, as such, are guilty of murder.

Our California Supreme Court resolved the two issues in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) and *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*).  *Lewis* held that a defendant is entitled to counsel, if requested, upon the filing of a facially sufficient petition, that is, one that makes the necessary averments, without regard to the defendant's eligibility for relief. (*Lewis*, at p. 957.)  If the trial court determines that the petitioner has made such a prima facie showing, it must issue an order to show cause and "then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' "  (*Id.* at p. 960.)  In making that determination, the prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence. (§ 1172.6, subd. (d)(3); *Lewis*, at p. 960.)  At the section 1172.6, subdivision (d)(3) hearing, the prosecution has the burden to prove the petitioner's ineligibility beyond a reasonable doubt.

Under *Lewis*, the trial court here erred by not appointing counsel for Lopez, who, it is undisputed, filed a facially sufficient petition.  Such error, however, is subject to harmless error review

under *People v. Watson* (1956) 46 Cal. 818.  (*Lewis*, *supra*, 11 Cal.5th at p. 974.)  The People therefore argue that any error was harmless because Lopez's jury was instructed that to find the special circumstance allegations true, it had to find that Lopez was either the actual killer, aided and abetted the murder with the intent to kill, or was a major participant in the felony who acted with reckless disregard for human life.  *Strong*, *supra*, 13 Cal.5th 698, rejected this argument, thereby resolving the second issue that had divided courts.  The court held that a pre-*Banks* and *Clark* finding that the defendant was a major participant who acted with reckless indifference to human life during a felony does not preclude that defendant from making a prima facie case for relief under section 1172.6, even if the trial evidence was sufficient to support the findings under *Banks* and *Clark*.  (*Strong*, at pp. 719–720.)  Thus, while Lopez may well have been a major participant who acted with reckless indifference to human life under *Banks/Clark*, a trial court can make this determination only after an evidentiary hearing under section 1172.6, subdivision (d), and must do so under the beyond-a-reasonable-doubt standard.

The People also argue that any error was harmless because Lopez was the actual killer.  While that was the prosecutor's theory at trial, the instructions and verdicts do not establish that he was convicted as the actual killer.  As we have said, the jury was instructed on felony murder, the natural and probable consequences doctrine, and conspiracy.  Also, the jury merely found that Lopez, as well as Flores, personally used a gun under section 12022.5.  The jury was not asked to and did not find that either defendant inflicted great bodily injury.  A finding that a defendant personally used a gun does not by itself necessarily

9

prove the defendant was the actual killer.  (*People v. Garrison* (2021) 73 Cal.App.5th 735, 743.)

Finally, the People contend that the petition was procedurally barred as a successive petition, as Lopez had filed at least two prior petitions seeking 1172.6 relief that had been denied and from which no appeals were taken.  *People v. Farfan* (2021) 71 Cal.App.5th 942, rejected a similar contention.  In that case, an initial petition was denied in 2019, and the defendant filed a second petition in 2020.  (*Id.* at p. 946.)  After noting that section 1172.6 jurisprudence continued to evolve after 2019, the court found that applying collateral estoppel to bar consideration of the 2020 petition would thwart Senate Bill 1437's purpose of ensuring a sentence is commensurate to individual criminal culpability and to giving relief to all entitled to resentencing.  (*Farfan*, at p. 950.)  The court found this especially true where the defendant had filed two facially sufficient petitions but never had counsel appointed.  (*Ibid.*)  We agree with *Farfan* and therefore conclude that Lopez's petition is not procedurally barred.

## DISPOSITION

The order denying Gualberto Lopez's petition is reversed and the matter is remanded with the direction to the trial court to appoint counsel for Lopez, to issue an order to show cause, and to conduct an evidentiary hearing in accordance with Penal Code section 1172.6, subdivision (d)(3).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

NGUYEN (KIM), J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.